## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NORTH DAKOTA

| | |
|---|---|
| WPX Energy Williston, LLC, ) | |
| ) | |
| Plaintiff, ) | **ORDER GRANTING PLAINTIFF'S** |
| ) | **MOTION FOR PRELIMINARY** |
| vs. ) | **INJUNCTION AND DENYING** |
| ) | **PLAINTIFF'S MOTION TO DISMISS** |
| Gabriel Fettig, Howard Fettig, Charles ) | **COUNTERCLAIM** |
| Fettig, Morgan Fettig, and the Honorable ) | |
| B.J. Jones, in his capacity as Associate ) | Case No. 1:24-cv-021 |
| Judge of the Three Affiliated Tribes ) | |
| District Court, ) | |
| ) | |
| Defendants. ) | |

Before the Court is the Plaintiff's motion for preliminary injunction filed on May 31, 2024. See Doc. No. 17. The Honorable B.J. Jones, in his capacity as Associate Judge of the Three Affiliated Tribes District Court, filed a response in opposition to the motion on July 10, 2024. See Doc. No. 23. The Plaintiff filed a reply brief on July 17, 2024. See Doc. No. 26. Defendants Gabriel Fettig, Howard Fettig, Charles Fettig, and Morgan Fettig (collectively "the Fettigs") did not file a response to the motion. Also before the Court is the Plaintiff's motion to dismiss the Fettigs' counterclaim filed on April 12, 2024. See Doc. No. 12. The Fettigs filed a response in opposition to the motion on May 31, 2024. See Doc. No. 16. The Plaintiff filed a reply brief on June 14, 2024. See Doc. No. 22. For the reasons set forth below, the Plaintiff's motion for preliminary injunction (Doc. No. 17) is granted and the motion to dismiss the counterclaim (Doc. No. 12) is denied and the counterclaim is stayed.

## I.    BACKGROUND

WPX Energy Williston, LLC ("WPX") is a Delaware limited liability company with its principal place of business in Oklahoma City, Oklahoma. WPX is a non-Indian entity. See Doc. No. 1. Gabriel Fettig, Howard Fettig, Charles Fettig, and Morgan Fettig are enrolled members of the Three Affiliated Tribes and believed to reside in North Dakota. The Honorable B.J. Jones is an Associate Judge of the Three Affiliated Tribes District Court (the "Tribal Court") on the Fort Berthold Reservation in North Dakota. The Three Affiliated Tribes District Court on the Fort Berthold Reservation is the judicial branch of the Mandan, Hidatsa, and Arikara Nation ("MHA Nation"). Defendants allege they are enrolled members of the Three Affiliated Tribe, owning mineral interests within the exterior boundaries of the Fort Berthold Indian Reservation.

The Fettigs own four trust allotments specific to this lawsuit, which were named and numbered for oil and gas production by the Bureau of Indian Affairs:

> Allotment 1109A – Lead Woman;
> Allotment 1836-A – Nancy Dancing Bull;
> Allotment 921 – Sweet Grass Woman;
> Allotment 853 – Skunk Creek.

Id.

WPX drills and operates oil and gas wells and owns mineral interests within the Fort Berthold Reservation. Pursuant to 25 U.S.C. §§ 323-328, the Bureau of Indian Affairs ("BIA") granted rights-of-way to WPX on the Fettigs' allotments for oil well pads, well bores, access roads, pipelines, and other appurtenances. Under BIA regulations, WPX was required to obtain the Fettigs' consent to the rights-of-way. Their consent included additional restrictions and conditions negotiated between the Fettigs and WPX specific to this case - a smoking ban. See 25 C.F.R. §§ 169.107 and 169.403(b).

In an underlying Tribal Court matter, the Fettigs alleged that WPX breached the side letter agreements, specifically the smoking ban, and filed suit in Tribal Court in June 2020. The Fettigs sought to recover damages for alleged violations of the negotiated rights-of-way on four allotments of trust land. Specifically, the Fettigs alleged they entered into "conditional Consents for Right of Way on the Allotments named above but the parties also entered into 'Side Letter Agreements' that mandated the treatment of the land." See Doc. No. 18-1. The mandates of protection included "the type of pipeline to be used, how roads would be buil[t], dust control, mitigation of damages, and prohibited hunting and smoking and trespassing." Id. WPX agreed to pay $5,000 in sanctions per violation of the smoking ban provisions. Id. The side letter agreements were incorporated and became part of the rights-of-way approved by the BIA. See Doc. No. 1.

WPX filed a motion to dismiss the tribal court action. The Tribal Court held a hearing on WPX's motion on June 2, 2021. See Doc. No. 23-1. On June 4, 2021, the Tribal Court issued an opinion, and denied the motion to dismiss, concluding the Tribal Court had jurisdiction over the action. Id. WPX then appealed the decision of the Tribal Court to the MHA Nation Supreme Court.

Before the MHA Supreme Court issued a decision on appeal, WPX filed an action in federal court against Gabriel Fettig, Howard Fettig, Charles Fettig, Morgan Fettig, the Honorable B.J. Jones, in his capacity as an Associate Judge of the Three Affiliated Tribes District Court, and the Three Affiliated Tribes District Court, seeking a declaration that the Three Affiliated Tribes District Court lacks jurisdiction over the suit filed by the Fettigs. See Doc. No. 1 in Case No. 1:21-cv-145. On September 17, 2021, WPX filed a motion for preliminary injunction requesting the Court enjoin the defendants from proceeding further with the underlying tribal court action. See Doc. No. 26 in Case No. 1:21-cv-145. On April 20, 2022, the Court enjoined the Tribal Court

proceedings, finding the *Dataphase* factors weighed in favor of the issuance of a preliminary injunction. See Doc. No. 50 in Case No. 1:21-cv-145. Relying in part on *Kodiak v. Burr*, 303 F. Supp. 3d 964, the Court concluded the Tribal Court lacked jurisdiction over the claims the Fettigs brought against WPX. Id. The Honorable B.J. Jones and the Tribal Court appealed the decision to the Eighth Circuit Court of Appeals. On July 3, 2023, the Eighth Circuit concluded WPX was required to exhaust tribal remedies because the question of jurisdiction was not directly controlled by *Kodiak*. WPX Energy Williston, LLC v. Jones, 72 F.4th 834 (8th Cir. 2023). The Eighth Circuit determined WPX had not exhausted tribal remedies because the MHA Supreme Court had not issued a decision on WPX's appeal. Without ruling on the ultimate jurisdictional issue, the Eighth Circuit vacated the preliminary injunction and remanded with directions to dismiss WPX's compliant without prejudice. Id. On December 22, 2023, the MHA Supreme Court issued a decision affirming the Tribal Court's determination that it has jurisdiction over the dispute between WPX and the Fettigs. See Doc. No. 1-8.

In addition to the federal and tribal court actions, the Fettigs filed an administrative complaint against WPX by letter to the BIA on May 6, 2022. See Doc. No. 1-5. In the complaint, the Fettigs requested the BIA cancel the oil and gas leases that correspond to the rights-of-way, issue a cease-and-desist order, and award monetary damages for violations of the smoking restrictions. On June 15, 2022, the BIA issued a decision declining to pursue an action for a violation of the rights-of-way. See Doc. No. 1-6. Because the side agreements are not part of the BIA's casefiles, the BIA concluded the terms of the side agreements were not incorporated into the right-of-way grants. Id. On July 18, 2022, WPX appealed the BIA's decision. See Doc. No. 1-7. WPX requested the BIA acknowledge the conditions and restrictions set out in the side

4

agreements are incorporated in the right-of-way grants. Id. WPX's appeal to the BIA is still pending.

On February 2, 2024, WPX initiated this action seeking a declaration that the Tribal Court lacks jurisdiction over the suit filed by the Fettigs. See Doc. No. 1. On March 18, 2024, the Fettigs filed a counterclaim against the Plaintiff. See Doc. No. 8. On April 12, 2024, the Plaintiffs filed a motion to dismiss the counterclaim for lack of judication. See Doc. No. 12. On May 31, 2024, WPX filed a motion for preliminary injunction. See Doc. No. 17. WPX requests the Court enjoin the Defendants from proceeding further with the underlying tribal court action. The Honorable B.J. Jones (the "Tribal Defendant") opposed the motion.

## II.     LEGAL DISCUSSION

### A.     PRELIMINARY INJUNCTION

The Plaintiff seeks a preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. The primary purpose of a preliminary injunction is to preserve the status quo until a court can grant full, effective relief upon a final hearing. Ferry-Morse Seed Co. v. Food Corn, Inc., 729 F.2d 589, 593 (8th Cir. 1984). A preliminary injunction is an extraordinary remedy, with the burden of establishing the necessity of a preliminary injunction placed on the movant. Watkins Inc. v. Lewis, 346 F.3d 841, 844 (8th Cir. 2003); Baker Elec. Coop., Inc. v. Chaske, 28 F.3d 1466, 1472 (8th Cir. 1994); Modern Computer Sys., Inc. v. Modern Banking Sys., Inc., 871 F.2d 734, 737 (8th Cir. 1989). The court determines whether the movant has met its burden of proof by weighing the factors set forth in *Dataphase Systems, Inc. v. C L Systems, Inc.*, 640 F.2d 109, 114 (8th Cir. 1981).

The *Dataphase* factors include: "(1) the threat of irreparable harm to the movant; (2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant; (3) the probability that movant will succeed on the merits; and (4) the public interest." Id. "No single factor in itself is dispositive; in each case all of the factors must be considered to determine whether on balance they weigh towards granting the injunction." Baker Elec. Coop., Inc., 28 F.3d at 1472 (quoting Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987)); see also CDI Energy Servs., Inc. v. W. River Pumps, Inc., 567 F.3d 398, 401-03 (8th Cir. 2009).

### 1. PROBABILITY OF SUCCESS ON THE MERITS

When evaluating a movant's likelihood of success on the merits, the court should "flexibly weigh the case's particular circumstances to determine 'whether the balance of equities so favors the movant that justice requires the court to intervene to preserve the status quo until the merits are determined.'" Calvin Klein Cosmetics Corp. v. Lenox Labs., Inc., 815 F.2d 500, 503 (8th Cir. 1987). At this stage, the Court need not decide whether the party seeking the preliminary injunction will ultimately prevail. PCTV Gold, Inc. v. SpeedNet, LLC, 508 F.3d 1137, 1143 (8th Cir. 2007). Although a temporary restraining order or a preliminary injunction cannot be issued if the movant has no chance on the merits, "the Eighth Circuit has rejected a requirement as to a 'party seeking preliminary relief prove a greater than fifty per cent likelihood that he will prevail on the merits.'" Id. The Eighth Circuit has also held that of the four factors to be considered by the district court in considering preliminary injunctive relief, the likelihood of success on the merits is "most significant." S & M Constructors, Inc. v. Foley Co., 959 F.2d 97, 98 (8th Cir. 1992). A likelihood of success on the merits of even one claim can be sufficient to satisfy the "likelihood of

6

success" *Dataphase* factor.  See Nokota Horse Conservancy, Inc. v. Bernhardt, 666 F. Supp. 2d 1073, 1078-80 (D.N.D. 2009).

The Court must consider the Plaintiff's substantive claims in determining whether the Plaintiff has a likelihood of success on the merits. WPX asserts claims of declaratory and injunctive relief. See Doc. No. 1. Specifically, WPX seeks a judgment declaring that the Tribal Court lacks jurisdiction over it and enjoining the Defendants from litigating the underlying action in Tribal Court.  Id. Accordingly, the merits of WPX's claims are centered on the legal question of the Tribal Court's jurisdiction.

In the motion for preliminary injunction, WPX contends it can demonstrate a strong likelihood of success on the merits of its claims because the United States Supreme Court decision in *Montana v. United States*, 450 U.S. 544 (1981) precludes the Tribal Court from exercising jurisdiction over the Plaintiff. In response to the motion for preliminary injunction, the Tribal Defendant maintains this Court lacks jurisdiction over the case before it because the "consensual relationship" exception to the general *Montana* rule gives the Tribal Court jurisdiction in this matter.

In *Montana*, the United States Supreme Court articulated the general rule that "the inherent sovereign powers of an Indian tribe do not extend to the activities of nonmembers of the tribe," absent express congressional delegation. Montana, 450 U.S. at 565. The Supreme Court then outlined two exceptions to this general rule when tribal jurisdiction may extend to nonmembers:

1) "A tribe may regulate, through taxation, licensing, or other means, the activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements[,]" and

7

    2) "A tribe may also retain inherent power to exercise civil authority over the conduct of non-Indians on fee lands within its reservation when that conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe."

Id. at 565-66. These exceptions are "limited ones" and are not to be construed in a manner that "swallows the rule." Plains Commerce Bank v. Long Family Land & Cattle Co., 554 U.S. 316, 330 (2008) (quoting Atkinson Trading Co. v. Shirley, 532 U.S. 645, 647 (2001). The United States Supreme Court further explained the mechanics of applying *Montana*'s principles in relation to tribal authority arising under federal statutes or treaties in *Strate v. A-1 Contractors*: "As the Court made plain in *Montana*, the general rule and exceptions there announced govern only in the absence of a delegation of tribal authority by treaty or statute." 520 U.S. 438, 439 (1997). Absent the applicability of one of the *Montana* exceptions or a delegation of tribal authority in federal law, *Montana*'s general rule applies and precludes the Tribal Court's jurisdiction from extending to the activities of WPX as a non-member.

### (a)    First *Montana* Exception

    The first exception articulated in *Montana* extends tribal jurisdiction to regulate, through taxation, licensing, or other means, the "activities of nonmembers who enter consensual relationships with the tribe or its members, through commercial dealing, contracts, leases, or other arrangements." Montana, 450 U.S. at 565. By its terms, this exception does not grant tribes unlimited regulatory or adjudicative authority over non-members, but instead permits the regulation of activities. Plains Commerce Bank, 554 U.S. at 330. In *Montana*, the United States Supreme Court referenced four cases in explaining this exception. See Montana 450 U.S. at 565-

66. Each of those cases cited in *Montana* "involved the regulation of non-Indian activities on the reservation that has a discernible effect on the tribe or its members." Plains Commerce Bank, 554 U.S. at 330 (discussing those cases cited by the *Montana* Court in support of the first exception to the general rule). As the Supreme Court explained in *Plains Commerce Bank*, the rationale for the *Montana* exceptions was to ensure tribal regulation of certain activities that "may intrude on the internal relations of the tribe or threaten tribal self-rule." Id. at 335. Even when a non-member consents to tribal authority, "the regulation must stem from the tribe's inherent sovereign authority to set conditions on entry, preserve tribal self-government, or control internal relations." Id. at 337. In *Plains Commerce Bank*, the Supreme Court determined a tribal court lacked jurisdiction over a discrimination claim that arose from a sale of land because the regulation of the sale was not an activity that implicated the tribe's sovereign interests. Id. at 335-36. The plaintiffs' discrimination claim arose out of a land sale of non-Indian fee land within the reservation to a non-member. Under these circumstances, the Supreme Court reasoned the non-Indian fee land was no longer tribal trust land and "had been removed from the tribe's immediate control." Id. at 336.

It is clear under the Supreme Court's analysis in *Plains Commerce Bank*, the first *Montana* exception is triggered when a non-member has a consensual relationship with the tribe or its members and such activities arising from the consensual relationship implicate the tribe's sovereign interests. Following the rationale of *Montana* and *Plains Commerce Bank*, this Court concludes that the tribe's regulation of the parties' side agreements on a smoking ban and rights-of-way allegedly breached by WPX does not implicate the tribe's sovereign interests. Therefore, even presuming a consensual relationship between members of the tribe and WPX exist, the first *Montana* exception is not triggered.

The Tribal Defendant contends the rights-of-way agreements between the Fettigs and WPX show that WPX entered into a consensual relationship with the tribe or its members because the side agreements constitute a commercial dealing between a non-member and tribal members. WPX argues that because Congress has not explicitly delegated authority to tribes to adjudicate matters over rights-of-way on allotted land, the Fettigs' claims arise under federal, not tribal law, and therefore does not implicate the tribe's sovereign interests.

In the underlying tribal court action, the Fettigs seek damages for alleged smoking violations of the negotiated rights-of-way on four trust allotments on the Fort Berthold Indian Reservation. See Doc. Nos. 18-1. The pertinent smoking ban language, which is materially the same for all the rights-of-way, is as follows:

> GRANTEE will not allow its employees, representatives, vendors, or others to hunt on the premises nor will GRANTEE allow smoking. Additionally, GRANTEE will post "No Hunting", "No Trespassing" and "No Smoking" signs. If GRANTEE, its employees, representatives, vendors, or others smoke on premises, GRANTEE will pay a fine of $5,000 per incident.

See Doc No. 1, p. 3.

In their amended tribal court complaint, the Fettigs allege WPX maintained an "industrial sized ashtray in a connex structure used as a smoke shack, wherein [WPX]'s employees were allowed to smoke at will in violation of the side agreements." See Doc. No. 18-1. The side agreements, entitled "Side Letter Agreement – Consent of Owners for Grant of Right-of-Way," at issue in the underlying tribal court action are letters drafted by WPX. The side agreements were incorporated into the right-of-way grants.

Pursuant to 25 U.S.C. § 324 and 25 C.F.R. §§ 169.108; 169.403(b); and 169.125(a), WPX was required to obtain the Fettigs' consent to the rights-of-way. The Fettigs were allowed to negotiate with WPX to include additional conditions and restrictions in the rights-of-way under 25 C.F.R. § 169.403(b). The BIA's authority to grant rights-of-way, on behalf of the Secretary of the

10

Interior, is derived from 25 U.S.C. §§ 323-328 and 25 C.F.R. Part 169. The grant of a right-of-way is signed by a representative of the BIA. In this case, the rights-of-way were signed by the Acting Superintendent of the Fort Berthold Agency. See Doc. No. 1-1, p. 4.

The federal government has a longstanding history of extensively and exhaustively regulating rights-of-way on allotted land. 25 U.S.C. §§ 323-328 were codified in 1948 to authorize the Secretary of the Interior to grant rights-of-way "for any purpose over all trust and restricted Indian lands." See generally, Cohen's Handbook of Federal Indian Law §15.09[4]. In this case, the rights-of-way are for property held in trust for individual Indian landowners, therefore, the individual landowners must consent to the rights-of-way and may negotiate additional conditions or restrictions. See 25 C.F.R. §§ 169.08; 169.125(a); and169.403(b). The process for obtaining rights-of-way is enumerated in 25 C.F.R. Part 169, Subpart C. In the Tribal Court's order, the court acknowledged "the execution and enforcement of rights-of-way on allotted and trust lands held by the United States for Indian tribes and individuals for natural resources extractions is a heavily federally-regulated industry…". See Doc. No. 23-1, p. 3-4.

The extensive federal regulatory scheme that governs rights-of-way over Indian land demonstrates that regulation of obtaining, analyzing, and enforcing such rights-of-way lies with the federal government, through its various agencies, and is outside the control of tribes. Although the rights-of-way involve allotted lands within the Fort Berthold Reservation, the issue that the Fettigs seek a determination of in the underlying tribal court action does not implicate tribal governance or internal relations. See Plains Commerce Bank, 554 U.S. at 335. This case is dissimilar to the cases cited in *Montana* in support of the 'consensual relationship' exception because the issue of obtainment, enforcement, analysis, and compliance is subject entirely to regulation and enforcement by the federal government.

In *WPX Energy Williston, LLC v. Jones*, 72 F.4th 834 (8th Cir. 2023), the Eighth Circuit Court of Appeals distinguished the dispute stemming from the underlying tribal action in this case from *Kodiak v. Burr*, 303 F.Supp.3d 964. The Eighth Circuit noted that in *Kodiak*, the disputed conduct of nonmembers – the failure to pay adequate royalties – occurred between a non-Indian company and the federal government, whereas the disputed conduct in *WPX Energy Williston* occurred between a non-Indian company and tribal members. Although the side agreements in this case were independently negotiated between WPX and tribal members, the relationship between the parties exists only by virtue of federal statutes and regulations.

The Court recognizes that while commercial activities on a reservation may certainly affect a tribe's self-governance and even intrude on the internal relations of the tribe, the specific activity from which the Fettigs seek relief in the underlying tribal court action is wholly regulated, determined, and enforced by the federal government. The side agreements were incorporated into the rights-of-way. Creating and enforcing rights-of-way on allotted lands held in trust for individual tribal members is left to the federal government. Given the federal nature of the contractual relationship between WPX and the Fettigs, the disputed activity in this case does not implicate the tribe's sovereign interests. The Court concludes the regulation and enforcement of rights-of-way on allotted lands held in trust pursuant to 25 U.S.C. §§ 323-328 and 25 C.F.R. Part 169 is not the type of consensual relationship under *Montana*'s first exception over which a tribe may exercise adjudicative authority.

### (b)    Second *Montana* Exception

The Court next considers whether *Montana*'s second exception brings this action within the Tribal Court's adjudicative authority. Under *Montana*, a tribe retains inherent power to exercise

authority over the conduct of non-members "when the conduct threatens or has some direct effect on the political integrity, the economic security, or the health or welfare of the tribe." 450 U.S. at 566. The United States Supreme Court's decisions in *Strate* and *Hicks* dictate a narrow interpretation of the second *Montana* exception. See Hicks, 533 U.S. at 359-61; Strate, 520 U.S. 457-58. Both *Hicks* and *Strate* caution that the second exception cannot be interpreted to severely shrink *Montana*'s general rule. In *Strate*, when considering whether tribal courts may entertain claims against non-members arising out of accidents on state highways within a reservation, the Supreme Court acknowledged careless driving on a public highway running through a reservation certainly jeopardizes the safety of the tribal members, but concluded the second *Montana* exception could not be interpreted so broadly so as to bring such claims within the adjudicative authority of the tribal court. Strate, 520 U.S. at 457-58. The Supreme Court cautioned that, read in isolation, the second exception "can be misperceived." Id. at 459. Instead, much like the first exception, the second *Montana* exception must be read in the context of those cases cited to support the exception. See id. at 458-59 (discussing cases cited by *Montana* Court in support of second exception). Ultimately, the Supreme Court in *Strate* concluded the second exception did not apply because "[n]either regulatory nor adjudicatory authority over the state highway accident at issue is needed to preserve 'the right of reservation Indians to make their own laws and be ruled by them.'" Id. at 459 (quoting Williams v. Lee, 358 U.S. 217, 220 (1959)).

The Court recognizes that smoking may jeopardize the health of tribal members. However, this Court does not interpret the second *Montana* exception to apply to a broad claim to recover monetary damages arising out of a smoking ban from a negotiated right-of-way provision under 25 U.S.C. §§ 323-328 and 25 C.F.R. Part 169. Adjudicative authority over compliance and enforcement of the smoking ban does not support the tribes' right to make their own laws and be

governed by them. The extensive and exhaustive federal regulatory scheme applicable to rights-of-way on allotted trust land shows the regulation and enforcement of rights-of way lies solely with the federal government, through its various agencies, and is outside the control of the tribe. The determination of whether WPX breached the rights-of-way by violating the smoking ban is controlled by federal laws and regulations, with the federal government, through its agencies, determining whether damages must be paid. When a federal agency has the sole discretion to decide the pivotal issue of a matter, neither tribal regulatory nor adjudicative authority over such is needed to preserve the "right of reservation Indians to make their own laws and be ruled by them." Williams, 358 U.S. at 220. Considering the United States Supreme Court's narrow interpretation of the second *Montana* exception, this matter does not fall within the second exception. Therefore, the *Montana* rule, and not its exceptions, applies here.

### 2. IRREPARABLE HARM

WPX must establish there is a threat of irreparable harm if injunctive relief is not granted, and that such harm is not compensable by an award of money damages. Doe v. LaDue, 514 F. Supp. 2d 1131, 1135 (D. Minn. 2007). "The 'mere possibility' that harm may occur before a trial on the merits is not enough." MKB Mgmt. Corp. v. Burdick, 954 F. Supp. 2d 900, 912 (D.N.D. 2013). The party that seeks a preliminary injunction must show that a significant risk of harm exists. Id. The absence of such a showing is sufficient grounds to deny injunctive relief. Id.

WPX argues it will suffer irreparable harm if forced to litigate in Tribal Court, which this Court has determined lacks jurisdiction. The Eighth Circuit Court of Appeals has explained that a district court can presume irreparable harm if the movant has a likelihood of success on the merits. Calvin Klein Cosmetics Corp., 815 F.2d at 505 (citing Black Hills Jewelry Mfg. Co. v. Gold Rush,

14

Inc., 633 F.2d 746, 753 (8th Cir. 1980)). Other courts have concluded a movant would suffer irreparable harm if forced to litigate in a tribal court that likely does not have jurisdiction. See Crowe & Dunleavy, P.C. v. Stidham, 640 F.3d 1140, 1157-58 (10th Cir. 2011) (finding the movant had demonstrated irreparable harm because the tribal court likely lacked jurisdiction and there would be no realistic way to recoup fees expended in tribal court). Consequently, WPX would suffer irreparable harm if forced to expend time, effort, and money in a forum that lacks jurisdiction. The Court finds this *Dataphase* factor weighs in favor of granting a preliminary injunction.

### 3.  BALANCE OF HARMS

As outlined above, WPX has demonstrated the threat of irreparable harm. The balance of harm factor requires consideration of the balance between the harm to the movant and the injury the injunction's issuance would inflict on other interested parties. See Pottgen v. Mo. State High Sch. Activities Ass'n, 40 F.3d 926, 929 (8th Cir. 1994). While the irreparable harm factor focuses on the harm or potential harm to the plaintiff, the balance of harm factor examines the harm to all parties to the dispute and other interested parties, including the public. See Dataphase, 640 F.2d at 114; Glenwood Bridge, Inc. v. City of Minneapolis, 940 F.2d 367, 372 (8th Cir. 1991).

If the Court does not issue a preliminary injunction preventing the Fettigs from proceeding in Tribal Court, WPX will be required to defend against the underlying action in a court which lacks jurisdiction over the matter. If the Court issues a preliminary injunction, the Tribal Court Plaintiffs may no longer proceed with their tribal court action and must pursue their claims in a different forum. Therefore, the Court finds this *Dataphase* factor weighs in favor of granting a preliminary injunction.

### 4.     PUBLIC INTEREST

Avoiding duplicative legal proceedings in multiple venues is in the public interest. However, the Court is also mindful that preserving tribal court adjudicative authority over issues affecting a tribe's internal relations and protecting tribal self-governance is in the public interest. Therefore, the Court finds this factor is neutral. Nonetheless, after a careful review of the entire record and the *Dataphase* factors, the Court finds the Plaintiff has met its burden under Rule 65(a) of establishing the necessity of a preliminary injunction order.

### B.     MOTION TO DISMISS COUNTERCLAIM

Federal Rule of Civil Procedure 12(b)(1) governs motions to dismiss for lack of subject matter jurisdiction. "Subject matter jurisdiction defines the court's authority to hear a given type of case." Carlsbad Tech., Inc. v. HIF Bio, Inc., 556 U.S. 635, 639 (2009). Jurisdictional issues are a matter for the Court to resolve prior to trial. Osborn v. United States, 918 F.2d 724, 729 (8th Cir. 1990).

"A court deciding a motion under Rule 12(b)(1) must distinguish between a 'facial attack' and a 'factual attack'" on jurisdiction. Osborn, 918 F.2d at 729 n.6. In a facial attack, "the court restricts itself to the face of the pleadings, and the non-moving party receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." Id. (internal citations omitted). "In a factual attack, the court considers matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards." Id. (internal citation omitted). If a defendant wishes to make a factual attack on "the jurisdictional allegations of the complaint, the court may receive competent evidence such as affidavits, deposition testimony, and the like in order to determine the factual dispute. Titus v. Sullivan, 4 F.3d 590, 593 (8th Cir. 1993).

In this case, the facts are undisputed, and neither party has submitted evidence of its own to show otherwise. Therefore, the Court will treat the motion as a facial attack and afford the Fettigs', the non-moving party, all the protections afforded by Rule 12(b)(6). The Court will consider only the complaint and the exhibits attached to the complaint. See Carlsen v. GameStop, Inc., 833 F.3d 903, 908 (8th Cir. 2016) (discussing a facial attack).

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires a pleading to contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) of the Federal Rules of Civil Procedure mandates the dismissal of a claim if there has been a failure to state a claim upon which relief can be granted. In order to survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). A plaintiff must show that success on the merits is more than a "sheer possibility." Id. A complaint is sufficient if its "factual content . . . allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. The court must accept all factual allegations as true, except for legal conclusions or "formulaic recitation of the elements of a cause of action." Id. at 681. Detailed factual allegations are not necessary under the Rule 8 pleading standard, rather a plaintiff must set forth grounds of its entitlement to relief which "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint does not "suffice if it tenders a naked assertion devoid of further factual enhancement." Ashcroft, 556 U.S. at 678 (2009). The determination of whether a complaint states a claim upon which relief can be granted is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." Id. at 679. Dismissal will not be granted unless it appears beyond

doubt the plaintiff can prove no set of facts entitling the plaintiff to relief. Ulrich v. Pop Cnty, 715 F.3d 1054, 1058 (8th Cir. 2013).

In this case, the parties dispute whether dismissal is warranted given WPX's pending administrative appeal with the BIA. The doctrine of "administrative exhaustion requires a party to follow prescribed procedures for obtaining administrative remedies before seeking judicial relief." See Klaudt v. United States v. Dep't of Interior, 990 F.2d 409, 411 (8th Cir. 1993). In *Klaudt*, the Eighth Circuit Court of Appeals held, "the clearly detailed administrative process and remedies [in C.F.R. Part 2] must be followed before seeking relief in the court system." Klaudt, 990 F.2d at 411. The doctrine of administrative exhaustion is well-established. Id. Under 25 U.S.C. § 328, the Secretary of the Interior has explicit rule-making authority to promulgate "rules governing rights-of-way over Indian lands and authorized the BIA to administer the regime." Id. see also 25 C.F.R. part 169. The BIA has enacted an extensive regulatory scheme that governs rights-of-way over Indian land, as discussed above. 25 C.F.R. § 169.404 sets forth the regulations the BIA must follow for compliance and enforcement of rights-of-way.

Here, it is uncertain whether the administrative process will resolve the Fettigs' claims. Accordingly, dismissal of their counterclaim is not appropriate at this stage. The Fettigs' counterclaim shall be stayed pending resolution of WPX's appeal, in order to allow the BIA to conduct an administrative review of the Fettigs' claims.

### III.  CONCLUSION

After a careful review of the entire record, and a careful consideration of all of the *Dataphase* factors, the Court finds the *Dataphase* factors, when viewed in their totality, clearly weigh in favor of the issuance of a preliminary injunction. The Plaintiff has met its burden of

establishing the necessity of a preliminary injunction. The Court **GRANTS** WPX's motion for preliminary injunction (Doc. No. 17), and **ORDERS** Defendants Gabriel Fettig, Howard Fettig, Charles Fettig, and Morgen Fettig be enjoined from further prosecuting the underlying action in the Three Affiliated Tribes District Court and the Honorable B.J. Jones, in his capacity as Associate Judge of the Three Affiliated Tribes District Court, enjoined from exercising jurisdiction over the underlying tribal court action until a final determination of the Plaintiff's claims in federal court.

Further, the Court **DENIES** WPX's motion to dismiss the Fettig's counterclaim (Doc. No. 12). Viewed in a light most favorable to the Fettigs at this stage of the case, the record before the Court supports a stay. For the reasons set forth above, the Defendant's counterclaim (Doc. No. 8) is **STAYED** until further order of the Court.

**IT IS SO ORDERED**.

Dated this 18th day of December, 2024.

>   */s/ Daniel L. Hovland*
>   Daniel L. Hovland, District Judge
>   United States District Court